

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| DENISE DOHERTY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:98-CV-1077-X |
| | § | |
| CENTER FOR ASSISTED | § | |
| REPRODUCTION, P.A., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This case involves a claim for failure to pay overtime under the Fair Labor Standards Act ("FLSA") of 1938, codified in 29 U.S.C. § 201-219, and a claim for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, codified in 42 U.S.C. § 2000e(k). Before the Court are cross-motions for summary judgment filed by Plaintiff and Defendant on December 22, 1999. For the reasons stated below, the Court concludes that Plaintiff was exempt from the FLSA's overtime compensation requirement as an employee employed in a bona fide professional capacity pursuant to § 213(a)(1), and that Plaintiff cannot establish a claim for sex discrimination in violation of Title VII. Therefore, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Plaintiff was employed as an embryologist by Defendant, which provides medical care primarily for treatment of infertile couples. *See generally* Def.'s Br. at 2-3. Defendant is owned and operated by Drs. Kevin and Kathy Doody. Defendant performs various assisted reproductive

M:\USER\3925LCT\CV\4\1998\1077\OPINION AND ORDER

procedures like artificial insemination and in-vitro fertilization ("IVF").

Plaintiff worked for Defendant as an embryologist from April 1994 until her resignation on March 24, 1998. *See generally* Def.'s Br. at 3-5   During her employment, Plaintiff also was the manager for Defendant's IVF and andrology labs. As an embryologist, Plaintiff's duties included performing egg retrievals; evaluating and classifying the eggs to determine which eggs are suitable for fertilization; performing traditional fertilization by determining what concentration of sperm to add to the eggs and then adding the sperm to the eggs; performing sperm injection by determining which eggs and sperm were suitable for injection and which specific egg and sperm would be injected; examining and analyzing the injected egg for proper fertilization; monitoring the embryo for proper development; testing the embryo for potential problems and likelihood of proper development; determining which embryo had the best chance of success and transferring such embryo to the patient; and communicating directly with the patients on an on-going basis to update them on the status of their cases. As the lab manager for the andrology and IVF labs, Plaintiff had supervisory responsibility for scheduling three to seven lab employees' hours, overseeing the labs' quality assurance programs, assisting the doctors with respect to hiring, salary, and timekeeping issues, overseeing lab employee training, assisting the development of lab protocols. and obtaining lab certification. *See* App. to Def.'s Mot. at 22-24 [hereinafter Def.'s App.].

During Plaintiff's employment with Defendant, Plaintiff was classified as an employee employed in a bona fide professional capacity exempt from the FLSA's overtime compensation requirement. *See generally* Def.'s Br. at 5-7. Defendant's lab employees, including Plaintiff, were required to use timecards to record their hours worked for Defendant's staffing, scheduling, and evaluation purposes. It is undisputed that during Plaintiff's employment, she never questioned her classification as an exempt employee and never informed Defendant that she was entitled to overtime

compensation. Plaintiff received a fixed salary based on a forty-hour workweek during her employment with Defendant. Regardless of whether Plaintiff worked more or less than forty hours in a given week, her salary amount for such pay period did not change. Plaintiff, as lab manager, instituted and administered a compensatory time ("comp time") policy by which lab employees, including herself, who worked on the weekend could take a corresponding amount of time off at a later date. Lab employees could accrue only twenty-four hours of comp time for working weekends, and such accrued time was reduced when the employee took time off. The comp time policy was not considered as compensation for overtime, and employees did not accrue comp time for working more than forty hours per week. Lab employees' salaries were not reduced, and were not subject to reduction, for absences of less than a full day after they exhausted their available vacation, sick, and comp time.

In March 1997, Plaintiff informed Defendant that she was pregnant. *See generally id.* at 7-10. Plaintiff continued to work for Defendant until she took a leave of absence due to her pregnancy in August 1997. While Defendant did not have a policy providing for paid maternity leave, Defendant continued to pay Plaintiff's salary for the entire time she was on leave. Plaintiff returned to work for Defendant in November 1997 after having her baby. Upon her return, Plaintiff lost some of her responsibilities she previously held as lab manager in December 1997. Dissatisfied at such loss, Plaintiff sought and obtained another job with Presbyterian Hospital while still working for Defendant. Subsequently on March 12, 1998, Defendant announced a reorganization of the IVF lab and promoted Martin Langley, a male employee, as co-manager of the IVF lab and gave him the responsibility for the lab's day-to-day operations and scheduling the lab employees–responsibility previously held by Plaintiff. Plaintiff still retained some responsibilities over the IVF lab, and retained all responsibilities over the andrology lab she had prior to her pregnancy leave. The reorganization

was precipitated by Defendant's interest in retaining Langley, who had threatened Defendant with resigning because of an apparent clash of personalities between Plaintiff and Langley. However, Plaintiff voluntarily resigned on March 24, 1998, and began working for Presbyterian Hospital two weeks after her resignation.

Plaintiff brought this action on December 4, 1998, alleging a violation of the overtime compensation requirement of the FLSA and sex discrimination under Title VII. *See* Pl.'s Original Compl. at 2-4. Before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment.

## II. ANALYSIS

### A. Summary Judgment Standard

FED R. CIV. P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the movant has met its burden of showing that there is no genuine issue as to any material fact and that judgment as a matter of law is proper, the burden shifts to the nonmovant to establish with significant probative evidence that a genuine issue of material fact exists. *See Kansa Reins. Co. v. Congressional Mortgage Corp. of Texas*, 20 F 3d 1362, 1371 (5th Cir.1994). The nonmovant may not rest upon the pleadings but must identify specific facts establishing that a genuine issue of material fact exists for trial. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir 1994) The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S Ct. 1348, 89 L. Ed. 2d 538 (1986) "A dispute about a material fact is

'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party." *Id.* (citation omitted)

### B. Plaintiff's Fair Labor Standards Act ("FLSA") Claim

Defendant seeks summary judgment on Plaintiff's FLSA claim, arguing that Plaintiff is exempt from the FLSA's overtime compensation requirement because she was an employee employed in a bona fide professional capacity pursuant to 29 U.S.C. § 213(a)(1). Specifically, Defendant argues that Plaintiff was an employee employed in a bona fide professional capacity because her primary duty consisted of the performance of work requiring knowledge of an advanced type in a field of science, her work required the consistent exercise of discretion and judgment in its performance, her work was predominantly intellectual and varied in character, and she was compensated for services on a salary basis at a rate of not less than $250 per week.

Plaintiff argues in her response to Defendant's motion and her own motion that she was not exempt from the overtime requirements of the FLSA. Plaintiff does not dispute that she was compensated for services on a salary basis at a rate of not less than $250 per week. However, Plaintiff disputes all the other grounds argued by Defendant, and alleges that she is entitled to summary judgment on her FLSA claim.

The FLSA requires covered employers to pay overtime compensation to employees who work more than forty hours per week. *See id.* § 207. Any employer in violation of this requirement may be required to pay unpaid overtime compensation and liquidated damages. *See id.* § 216. However, the FLSA and relevant regulations by the U.S. Secretary of Labor exempt from the overtime

compensation requirement any employee who is paid on a salary basis at a rate not less than $250 per week and who is employed in a bona fide executive, administrative, or professional capacity. *See* § 213(a)(1); 29 C.F.R. § 541 3 (1999) An employee is paid "on a salary basis"

> if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed

*Id.* §§ 541.118(a), 541.312. The Secretary defines the term "employee employed in a bona fide professional capacity," in relevant part, as any employee

> (a)  whose primary duty consists of the performance of
> (1)  Work requiring knowledge of an advance [sic] type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes.
>
> (b)  Whose work requires the consistent exercise of discretion and judgment in its performance, and
> (c)  Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) . .

*Id.* § 541.3. Section 213(a)(1)'s exemption is construed narrowly against the employer and in favor of the employee. *See Owsley v. San Antonio Ind. Sch. Dist.*, 187 F.3d 521, 523 (5th Cir. 1999). The employer bears the burden of proving that an employee is exempt pursuant to § 213(a)(1). *See id.*

Under the above authority, Plaintiff, as an embryologist, was clearly an employee exempt from the FLSA's overtime compensation requirement First, it is undisputed that Plaintiff received a salary not less than $250.00 per week; Plaintiff's starting salary was $40,000 per year, and her ending salary was approximately $56,000 per year *See* Def.'s App. at 8, 49.

Second, Plaintiff's work was of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study "Knowledge of an

advanced type" means knowledge which cannot be attained at the high school level, knowledge in a field of science or learning, and knowledge customarily acquired by a prolonged course of specialized intellectual instruction and study. *See* 29 C.F.R. §§ 541.301(a), (b), (c). The Secretary lists "various types of physical, chemical, and biological sciences, including pharmacy and registered or certified medical technology" as professions which meet the requirement for a prolonged course of specialized intellectual instruction and study. *Id.* § 541.301(e)(1). Plaintiff's employment as an embryologist with Defendant required a bachelor of science ("B.S.") degree, and Plaintiff has a B.S. in biology with a minor in chemistry. In addition, Plaintiff was certified as a technical supervisor in embryology and andrology by the American Association of Bioanalysts, which requires a B.S. degree, four years of experience in in-vitro fertilization, and satisfactory completion of a certification exam.

Third, Plaintiff's work required the consistent exercise of discretion and independent judgment.

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. . . . [It] implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

*Id.* § 541.207(a). "[S]uch discretion must involve the authority to make basic decisions that affect the fundamental operation of the enterprise in question without seeking guidance from supervisors as a matter of course." *Hashop v. Rockwell Space Ops. Co.*, 867 F. Supp. 1287, 1298 (S.D. Tex. 1994) (Kent, J.) Plaintiff testified that she exercised discretion and independent judgment at every step of the in-vitro fertilization process, including evaluating the eggs and determining which eggs, among many possible eggs, were suitable for fertilization; evaluating and selecting the specific egg to be injected with sperm; evaluating and selecting the sperm for injection, and actually injecting the sperm into the egg using sophisticated microscopic tools; analyzing the eggs to evaluate and

determine whether they had been properly fertilized and to assess the likelihood of proper development; assessing whether the embryo was developing properly; evaluating and deciding which embryo was to be transferred to the patient based on her assessment of which embryo had the best chance of success; and interacting directly with the patients regarding the status of the case. *See* Def.'s App. at 17-22. In addition, Plaintiff testified that she performed these duties with no direct supervision, and that the doctors relied on her judgment and decision-making at every step of the process. *See id.* at 19-20  Finally, Plaintiff exercised discretion and independent judgment with respect to matters of significance--Plaintiff's work involved the creation of human life  Plaintiff testified that a mistake on her part at any stage of the process could be critical for the patient and devastating to Defendant's business  *See id.* at 22

Fourth, Plaintiff's work was predominantly intellectual and varied in character, as opposed to being routinely mental, manual, mechanical, or physical  "This test applies to the type of thinking which must be performed by the employee in question " 29 C F.R § 541.306(a). The Secretary has stated that a chemist or medical technologist who performs complicated chemical, microscopic, and bacteriological tests and procedures performs work that is predominantly intellectual and varied in character. *See* §§ 541.306(a), (b); *see also Nairne v. Manzo*, Civ A. No. 86-0206, 1986 WL 12934 at *5-6 (E.D Pa. 1986) (holding that a certified opthalmological technician was an exempt professional); *Molinari v. McNeil Pharms.*, Civ. A. No. 84-5085, 1986 WL 5922 at *5-6 (E.D. Pa. 1986) (holding that a research associate who had a chemistry degree and who was part of a research team investigating and evaluating syntheses for pharmaceutical products was an exempt professional), *aff'd*, 810 F.2d 1164 (3rd Cir 1987) (table). Plaintiff's work was predominantly intellectual and varied in character because she testified that she performed her job as an embryologist, as described above, without any direct supervision  Plaintiff's testimony establishes that her performance of the

tests enabled her to make deductions and deal with varied problems as a matter of course, and does not establish that her work was of a purely mechanical or routine nature. *See Owsley*, 187 F.3d at 527 (holding that athletic trainers not under immediate supervision of physicians were exempt professionals); *cf. Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 266-67 (5th Cir. 2000) (ruling that senior production planners for ship construction projects were exempt as salaried administrative employees). Plaintiff's arguments in response to these grounds for summary judgment are replete with conclusory, and sometimes exclamatory, statements that do not create a genuine issue of material fact.

Finally, Plaintiff has no evidence or authority to support her argument that she was not exempt from the FLSA's overtime compensation requirement. In her motion for summary judgment, Plaintiff argues that she is not exempt because (1) Defendant required her to keep timecards and tracked her time worked on an eighty-hour-per-two week basis, (2) Defendant's comp time policy allowed Plaintiff to accumulate comp time whenever she worked on a weekend and deducted such time whenever she worked less than eighty hours in a two-week period, (3) Defendant deducted accumulated vacation and sick time in increments of less than one day, (4) Defendant audited Plaintiff's time and once docked Plaintiff two days' pay, and (5) because Plaintiff and other employees' pay were "subject to" docking by Defendant if the eighty-hour-per-two weeks requirement was not met.

None of these arguments have merit. First, use of timecards does not affect an employee's status as exempt from the FLSA's overtime compensation requirement. *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997) (rejecting argument that the use of a time clock precludes the applicability of the bona fide administrative employee exemption); *Kuchinskas v. Broward County*, 840 F. Supp. 1548, 1556 (S.D Fla 1993) (holding that requiring county employees to keep

timesheets did not affect their status as "salary based" employees), *aff'd*, 86 F.3d 1168 (11th Cir. 1996). Plaintiff also admitted that timecards may be helpful to Defendant in assessing staffing and scheduling needs. *See* Def.'s App. at 58, 80. Second, Defendant's comp time policy, whereby exempt employees like Plaintiff can accrue comp time for extra hours worked on the weekend and have such accrued comp time subject to reduction when the employee works fewer hours than required in a given period, does not affect Plaintiff's status as an exempt employee. *See, e.g., Cooke v. General Dynamics Corp.*, 993 F. Supp. 50, 53 (D. Conn. 1997); *Barner v. City of Novato*, 17 F.3d 1256, 1261 (9th Cir. 1994); *Kuchinskas*, 840 F. Supp. at 1556; *cf. York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir. 1991). *But see Klein v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 990 F.2d 279, 284 (7th Cir. 1993) (holding that the deduction of accrued leave time on an hourly basis was inconsistent with the FLSA's overtime compensation requirement). Comp time is not "compensation" or "salary" under the FLSA, and "any reduction to leave banks would not negate an exempt employee's status." *Kuchinskas*, 840 F. Supp. at 1556; *see also Barner*, 17 F.3d at 1261. Plaintiff's argument is also disingenuous because Plaintiff herself drafted the comp time policy, which specifically stated that Defendant's lab employees were exempt from the FLSA's overtime compensation requirement, and Plaintiff testified that she drafted the policy with knowledge of the exemption. *See* Pl.'s Mot. App. at 33, Def.'s App. at 12-13. Third, even if Defendant deducted Plaintiff's vacation and/or sick time in increments of less than one day, such deduction is irrelevant to her status as an exempt employee because employers *can* make such deductions of accrued vacation or sick time. *See York*, 944 F.2d at 242. What is relevant is whether any *salary* was deducted, *see id.*, and the record establishes that Plaintiff's *salary* was *never* deducted to meet the eighty hours requirement. Fourth, Plaintiff's claim that she was "docked" two days' pay is without any merit and is a transparent attempt to create an issue of fact. It is undisputed that Plaintiff's salary

was never reduced or "docked" for any absences except on one occasion in December 1997 when Plaintiff took leave without pay for personal reasons. *See* Def.'s Suppl. App. at 101. Plaintiff's re-characterization of this unpaid leave as a deduction in violation of the FLSA is disingenuous. In sum, Plaintiff's arguments are merely based on her subjective belief that she was not exempt from the FLSA's overtime compensation requirement or are futile efforts at creating an issue of fact, and such arguments cannot withstand summary judgment.

Because Plaintiff is exempt from the FLSA's overtime compensation requirement, there is no need to address whether Defendant willfully violated the FLSA by not paying her overtime compensation.

### C. Plaintiff's Sex (Pregnancy) Discrimination Claim

In addition to the FLSA claim, Plaintiff also alleges that Defendant committed pregnancy and sex discrimination in violation of Title VII. Specifically, Plaintiff alleges that Defendant told her during her pregnancy that she would be demoted because of her pregnancy and that Defendant actually reduced Plaintiff's duties and eliminated her opportunity for advancement by placing Langley, a male employee, in her former position. Plaintiff states that as a result of such actions, which Defendant called a reorganization, Plaintiff was constructively discharged and forced to seek other employment.

Defendant seeks summary judgment on this claim because Plaintiff cannot establish that Defendant committed pregnancy or sex discrimination. Defendant specifically contends that Plaintiff cannot establish a prima facie case of discrimination based on her pregnancy or sex because she cannot show that she was pregnant at the time of her discharge or was constructively discharged. Defendant also argues that, even assuming that Plaintiff has established a prima facie case, Defendant has articulated a legitimate, non-discriminatory reason for the actions of which Plaintiff complains,

and Plaintiff has no evidence sufficient to prove that Defendant's reason is false

Title VII prohibits discrimination on the basis of sex, which includes discrimination on the basis of pregnancy. *See* 42 U.S.C. §§ 2000e-2; 2000e(k); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 205-06 (5th Cir. 1998). A plaintiff claiming employment discrimination under Title VII must establish a prima facie case of discrimination, which gives rise to an inference of discrimination by the employer. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1823, 36 L. Ed. 2d 668 (1973). "To establish a prima facie case of discrimination under Title VII, a plaintiff may prove her claim either through direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas*." *Urbano*, 138 F.3d at 206. The *McDonnell Douglas* test requires the plaintiff to show that (1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated *See McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Urbano*, 138 F.3d at 206 Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant, which is required to articulate a legitimate, nondiscriminatory reason for the challenged action *See McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981). An employer meets this burden of production by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. *See Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir. 1991), *cert. denied*, 503 U.S. 908, 112 S. Ct 1267, 117 L. Ed 2d 495 (1992). If the employer meets this burden, then the plaintiff is required to prove that the reason given by the employer was not legitimate and nondiscriminatory, but was merely pretext to conceal its discriminatory motive. *See McDonnell Douglas*, 411 U.S. at 804-05, 93 S. Ct at 1825-26 The burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff. *See Burdine*, 450 U.S. at 256, 101 S. Ct at 1095; *Marcantel v. Louisiana Dep't of Transp. & Dev.*, 37 F.3d 197, 200 (5th Cir. 1994)

Plaintiff seeks to satisfy the third element of the *McDonnell Douglas* test by alleging that she suffered an adverse employment action by being constructively discharged. "'To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign.'" *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir 1997) (quoting *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir 1994)) In determining whether an employee was constructively discharged, the following factors are relevant, singly or in combination:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor, (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation, or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Barrow*, 10 F.3d at 297. These factors must reveal the existence of aggravating circumstances that justify the employee's resignation *See Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1077 (5th Cir. 1981)

Plaintiff makes several allegations in attempting to make a prima facie constructive discharge claim. First, Plaintiff alleges that she was demoted when Defendant reorganized the IVF lab by making her co-supervisor with Langley, suffered a reduction in pay when she received a lower raise than she expected and when she did not receive a Christmas bonus, and suffered a reduction in job responsibilities when Defendant terminated Plaintiff's editing of Defendant's newsletter and when she lost some supervisory responsibility over the IVF lab

However, these allegations are unpersuasive First, Plaintiff was not demoted. Regardless

of Plaintiff's characterization of the reorganization as a "demotion," it is undisputed that Plaintiff upon her return from pregnancy retained supervisory authority over the IVF lab and the andrology lab, and that her salary was unchanged. Although she shared supervisory authority over the IVF lab with Langley, and lost some responsibility over the lab that she had before the pregnancy, Defendant repeatedly emphasized to Plaintiff that the reorganization was not a demotion. *See* Def.'s App. at 28-29. Second, Plaintiff's salary was not reduced as a result of Defendant's reorganization. In fact, Plaintiff received a raise after her annual review in February 1998. That her raise was not as high as Plaintiff expected does not establish that she was constructively discharged. In addition, while Plaintiff complains that she did not receive a Christmas bonus in 1997, she acknowledged that bonuses were paid at Defendant's discretion, Defendant paid her for ten weeks while she was on pregnancy leave, and such pay constituted her bonus. *See* Def.'s App at 28, 30-31. Fourth, Plaintiff's complaint that she suffered a reduction in job responsibilities–such as her scheduling of IVF lab personnel, responsibility over Defendant's newsletter, and knowledge of and recommendations for IVF lab personnel bonuses–fails to establish that she was constructively discharged in light of the fact that Plaintiff voluntarily sought and accepted another job *before* Defendant reorganized the IVF lab, and received a good performance review and a concomitant raise shortly before the reorganization. *See McCann v. Litton Systems, Inc.*, 986 F.2d 946, 952 (5th Cir. 1993) (holding that a slight decrease in pay coupled with a loss of some supervisory responsibilities cannot constitute constructive discharge). Finally, even when these factors are seen in combination, they do not establish that Plaintiff's working conditions were so intolerable that a reasonable person would be forced to resign. *See id., Jurgens v. EEOC*, 903 F.2d 386, 392 (5th Cir. 1990). Plaintiff offers hardly any evidence except for her conclusory and speculative statements that "she felt" Defendant "demoted" her through its actions. While the record does suggest that Plaintiff and Defendant's

relationship became strained, the record does not establish that Defendant's actions made working conditions so intolerable as to force a reasonable person in Plaintiff's situation to resign

Finally, Plaintiff's last-ditch effort to save her discrimination claim by alleging that Defendant unlawfully retaliated against her is baseless. Plaintiff's complaint does not allege a retaliation claim, but her Reply Brief to her motion alleges that Defendant "retaliated" against her for taking pregnancy leave. *See* Pl.'s Reply Br at 1-2  Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made unlawful by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U S.C § 2000e-3(a). Because there is no evidence in the record of any opposition conduct by Plaintiff to any allegedly discriminatory practice of Defendant, Plaintiff's retaliation claim fails.

Because Plaintiff cannot make a prima facie case of sex discrimination, the Court expresses no opinion on other grounds raised by Defendant

### III. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED**. It is

**ORDERED** that Plaintiff's claims in her Original Complaint are **DISMISSED WITH PREJUDICE**

It is **SO ORDERED**.

*Joe Kendall*
JOE KENDALL
UNITED STATES DISTRICT JUDGE

Signed on July _12_, 2000.